SELMA, ROME AND DALTON RAILROAD COMPANY, plaintiff in error, *vs.* MARY A. REDWINE, administratrix, defendant in error.

1. The bill of exceptions or the motion for a new trial, should show that testimony which is claimed to be illegal was objected to by the complaining party. A mere statement to that effect in the brief of the evidence is not sufficient.

2. Where the witnesses state that the land taken by a railroad company is worth as land only $6 00 or $7 00 per acre, but in the form and for the purpose it is taken it is worth to the balance of the land from $30 00 to $50 00 per acre, the presumption is that the increased valuation is put upon it on account of the damages done to the balance of the land : and no other damages should be allowed than what are specially stated and proved as further and additional damages.

3. Where the witnesses give the value of the land appropriated by the road, on the basis above stated, the damages cannot be increased by general statements that the value of the land as taken, with the incidental advantages and disadvantages done to the land by the road, make a sum greater than what the value of the land thus estimated amounts to.

4. The special damage suffered by the plaintiff's orchard may be allowed as proven.

5. Interest in such cases cannot be given except as part of the damages, and then only from the time when the damages occurred.

6. Under the authority given by statute to this court, it is directed that a new trial be granted, unless the defendant in error will write from the verdict and judgment the sum of $220 00, and upon the same being done the judgment shall stand affirmed.

Railroads. Eminent domain. Damages. Interest. Practice in the Supreme Court. Before Judge HARVEY. Whitfield Superior Court. April Term, 1873.

This case arose upon proceedings instituted by the Selma, Rome and Dalton Railroad Company, under its charter, to assess the land of Mary A. Redwine, as administratrix of William Redwine, deceased, appropriated by said company for its right of way, and also the damages sustained by her from such appropriation. A jury of seven freeholders was selected for the purpose aforesaid, and found for said Mary A. $680 00. From this verdict the company appealed to the superior court. Upon the trial of the issue thus formed the evidence made substantially the following case :

The land in controversy is a portion of lot two hundred and ten in the thirteenth district and third section of Whitfield county. The railroad runs nearly straight through the lot, and for two-thirds of the distance, parallel to the dirt road leading from Dalton to Sugar Valley. The land is good for the section ; what is usually termed valley land. The dirt road is between appellee's house and the railroad. The fifty feet taken for right of way extends across the dirt road to within a few feet of the door-steps of her house. The bulk of her land lies beyond the railroad from her house. The embankment near the culvert, towards the north line of the lot, is three or four feet high. The course of the branch has been turned. The land on the east of the railroad, on the same side with the house, is uncultivated. It is tolerably well-timbered woodland. There is considerable inconvenience in turning out and managing stock on account of the railroad. There is a culvert towards the south side of the lot, which permits the water from a wet-weather stream to

pass under the railroad.    It is too small for the purpose intended.    When the water is high it backs up the stream, overflows it, and cuts across the orchard, injuring it to the amount of about $100 00.    There has been considerable washing from this cause.    Some of the trees in the orchard have died.    The land taken is a strip one hundred feet in width, running through the entire lot, embracing about six acres.    In addition to this, one acre was ruined by the washing.    The railroad was partly graded in the year 1859.    The appellee's intestate purchased the land in 1860 or 1861.    The track was completed and the cars commenced running in the fall of 1870.

The witnesses for the appellee value the land in itself at from $7 00 to $10 per acre, but taking into consideration the damage done by the washing of the other land, injury to the orchard, and incidental damage, at $680 00, the amount awarded by the first jury.    These witnesses also testify that the land as taken is worth from $30 00 to $50 00 per acre.

The witnesses for the appellant value the land in itself at from $3 00 to $6 00 per acre.    Taking into consideration the shape in which it is taken, they variously estimate it at from $10 00 to $20 00 per acre.

The appellant requested the court to charge the jury as follows : " No interest on any demand can be recovered beyond the time such demand would be barred by the statute of limitations, four years in this case, as it is in the nature of an account.    The value of the land is sought in this case, and no interest can be estimated to increase the damages until appellant gets the land, at least, no interest, barred by the statute of limitations, can be estimated."

The court refused to charge as requested, but instructed the jury, on the subject of interest, as follows : " Interest can be estimated from the time the damages ought to have been paid to Redwine, by way of increasing damages."

The jury found for the appellee $680 00.    The appellant moved for a new trial because the verdict was contrary to evidence, and because the court erred in refusing to charge as

requested, and in charging as above set forth.  The motion was overruled, and appellant excepted.

The brief of testimony recites that certain evidence therein embraced was objected to on the part of the appellant, but neither the motion for a new trial nor the bill of exceptions contains any complaint of the ruling upon this point.

PRINTUP & FOUCHE; J. E. SHUMATE, by brief, for plaintiff in error.

JOHNSON & McCAMY, for defendant.

TRIPPE, Judge.

1. In the argument of this case it was urged that certain testimony was illegally admitted.  The reply was made that the record did not show that objection was made to its admission, or that any exception was founded thereon, either in the bill of exceptions or in the motion for a new trial.  And this is true.  There is no reference to such a point, except that in the brief of the evidence there is a statement to that effect. This is not sufficient.  The proper way to have raised the question was to have made the admission of the testimony claimed to be illegal a ground in the motion for a new trial, and to have verified it by the sanction of the judge, or to have set it forth in the bill of exceptions as one of the errors complained of.  The bill of exceptions purports to set out specially every ruling of the court which was excepted to, and these are but recitals of the various grounds taken in the motion for a new trial.  They cannot be enlarged by mere reference to a note made by counsel for plaintiff in error, in the brief of the testimony, although such a statement was in the brief when it was filed and when the motion was heard.

2. But from the judgment we render the point is of no practical importance in this case, as we hold that for another reason the verdict, so far as it could have been affected by the testimony which is claimed to have been objected to, shall be corrected or a new trial had.  The witnesses for the defendant

in error gave the real value of the land taken by the railroad at $6 00 or $7 00 per acre, but in the form and for the purpose it was taken, they state it is worth to the balance of the land from $30 00 to $50 00 per acre. Most of them say that it is worth as land only the comparatively small figures above stated, but they put the value expressed by the other figures upon it because it is taken out of the land in such a shape and for the purpose of using it for a railroad. These statements of the increased valuation are made in connection with others, showing the disadvantages which the balance of the land—the plantation, and the dwelling house, etc.—suffers by reason of the railroad running through the lot. This furnishes a very strong presumption that the raising the value from $7 00 to $50 00 per acre, was on account of the whole damage resulting to the lot of land by running the road through it, and no other damage should have been allowed except what were specially stated and proved as further and additional damages.

3. We are satisfied that the value of the land appropriated by the road was founded on the basis above stated, and the damages should not have been increased by the opinion of the witnesses that the value of the land as taken, with the incidental advantages and disadvantages to the land by the road, make a sum greater than the proven estimates furnished by the same witnesses would amount to. It was these opinions of the witnesses which it is stated in the brief of the testimony were objected to. Whether the exception to the evidence was or was not properly shown, we do not think the testimony was sufficient, when considered in connection with the balance of it, to have authorized the jury to have gone beyond what is above indicated as the true rule to have been adopted for ascertaining the damages. As will be presently seen we have directed this excess in the verdict to be remitted, or that a new trial be granted.

4. There was testimony that the orchard on the land was specially damaged $100 00, and it was proper to allow for this. The road was located and partly graded in 1859. The

intestate of defendant in error purchased the land in 1860 or 1861. Nothing further was done on the road until about 1870; the road was completed and the cars commenced running in the fall of that year. The writ for the assessment of damages was sued out in November, 1870.

5. Under this state of facts interest could not have been given for a period further back than the year 1870, which would make it about three years to the trial. If these seven acres be taken as the quantity of land used by the railroad, including the acre ruined by the water from an insufficient culvert, and $50 00 per acre be counted as the average proven value, estimated in connection with the general damage to the land, and $100 00 be added for the injury to the orchard, all this, with interest, will make about the sum of $460 00.

6. As the jury found a verdict for $680 00 it is directed that a new trial be granted, unless the defendant in error do write from the verdict and judgment the sum of $220 00, and upon the same being done the judgment for the balance shall stand affirmed.